UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNY PAESCH,

      Plaintiff,

v.                          CASE No. 8:11-CV-2807-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

      The plaintiff, who was twenty-eight years old at the time of the most recent administrative hearing and who has a high school education in special classes (Tr. 30), has worked as a parking lot attendant (Tr. 39, 40).

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

She filed a claim for supplemental security income payments, alleging that she became disabled due to a learning disability (Tr. 175). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "borderline intellectual functioning, mild degenerative changes of the lumbar spine, history of asthma and obesity" (Tr. 14). She concluded that, due to these impairments, the plaintiff has the following restrictions (Tr. 17):

> [T]he claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, she can sit for six hours in an eight hour workday and stand and walk for two hours in an eight hour workday,. She is never to climb, kneel or crawl. She can occasionally balance, sto[o]p, and crouch. She is to avoid concentrated exposure to humidity, heat, cold, dust, fumes or gases. She is unable to perform detailed and complex tasks.

The law judge found that these restrictions prevented the plaintiff from returning to past work (Tr. 19). However, based upon the testimony of a vocational expert, the law judge ruled that there are jobs that exist in significant numbers in the national economy that the plaintiff can

perform, such as sealer, ticket taker, and systems monitor (Tr. 20). The law judge therefore decided that the plaintiff was not disabled (id.). Accordingly, the Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that the law judge's determination of her residual functional capacity did not include all of her mental limitations (Doc. 24, pp. 6, 7).[2]  Consequently, she argues that the vocational expert's testimony that she could perform jobs existing in the national economy, which was based on a hypothetical question that reflected the allegedly deficient residual functional capacity, does not constitute substantial evidence that she is not disabled (<u>see</u> <u>id</u>.).  This contention is unmeritorious.

With regard to the plaintiff's mental functioning, the plaintiff agrees with the law judge's finding that she has a severe impairment of borderline intellectual functioning (Tr. 14; Doc. 24, p. 7).  The law judge determined that, due to this impairment, the plaintiff is unable to perform detailed and complex tasks and included those limitations in the plaintiff's

---

[2]The plaintiff states that she is not challenging the law judge's determination of her residual functional capacity with regard to her physical limitations (Doc. 24, p. 7).

residual functional capacity (Tr. 17).  These limitations, furthermore, are supported by substantial evidence.

At the outset, it is noted that the medical records with regard to the plaintiff's mental functioning are sparse.  However, as the law judge pointed out in her decision (Tr. 18), consultative examiner Karl A. Hoffman, Ph.D., conducted a mental status examination and administered a standardized intelligence test (see Tr. 276-80).  Dr. Hoffman found that the plaintiff had borderline intellectual functioning (Tr. 279).  However, Dr. Hoffman opined that the plaintiff "is capable of performing at least basic, unskilled work-related activities" (Tr. 280).   Further, non-examining reviewing psychologist Paul Taren, Ph.D., similarly opined that the plaintiff "is able to carry out simple, routine tasks despite the limitations resulting from her impairment" (Tr. 297).   Moreover, Dr. Taren gave a cogent explanation for his opinion, stating (id.):

> The [plaintiff's] basic cognitive processes are intact.  She demonstrates a practical intelligence, decent writing skill, and resourcefulness, which is not necessarily tapped by conventional measures of intelligence.  She can make simple decisions ....  Moreover, she would not require special supervision in order to sustain a work routine.  She ably tends to her self-care, and she relates adequately with others for practical and social purposes.

Significantly, the record contains no opinions to the contrary. Additionally, the law judge pointed out that an examining school psychologist stated that the plaintiff recalled and understood instructions without apparent difficulty (Tr. 18; see Tr. 322). It is also noteworthy that the plaintiff had the intellectual capability to file and pursue this claim for supplemental security income on her own. In sum, the mental limitations in the plaintiff's residual functional capacity are supported by the record.

Furthermore, the limitations in the hypothetical questions to the vocational expert matched the plaintiff's mental residual functional capacity. See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1270 (11th Cir. 2007) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). Thus, the law judge told the vocational expert to assume that the plaintiff is "limited to performing work involving no detailed or complex tasks" (Tr. 42). In addition, the law judge told the expert (id.):

> Q: Now for the hypothetical questions that I ask, I'd like you to assume for each that we have an individual ... with a high school education but functioning at a marginal level with regard to reading and writing and ... pa[s]t working experience as a parking lot attendant.

Moreover, with regard to the pertinent hypothetical question, the law judge emphasized to the vocational expert that he "identify work of an unskilled nature" (Tr. 43). In response, the vocational expert opined that the plaintiff could work as an ampoule sealer, ticket checker, and a surveillance system monitor (Tr. 44). Therefore, the law judge's finding that the plaintiff is not disabled because she could perform other work available in significant numbers in the national economy is supported by substantial evidence. See Ingram v. Comm'r of Soc. Sec. Admin., supra.

The plaintiff argues that the law judge's limitations to jobs involving no detailed and complex tasks "is inadequate to describe all of [her] limitations as a result of her mental impairment" (Doc. 24, p. 7). Specifically, the plaintiff argues that the residual functional capacity "does not contemplate a marginal education" or "very low mental aptitude" (id., p. 8). This contention is meritless.

First, the law judge correctly informed the expert that the plaintiff has a high school education (Tr. 42; see Tr. 30). Additionally, the law judge specified that the plaintiff functioned "at a marginal level with regard to reading and writing" (Tr. 42). Although the plaintiff disputes that the pertinent hypothetical question included a limitation for marginal-level

reading and writing (Doc. 24, p. 8), this contention is baseless. Thus, the law judge told the vocational expert "to assume for each" of the "hypothetical questions" the educational background and reading and writing limitations she had stated (see Tr. 42). There is nothing in the record which suggests that, simply because the law judge did not repeat these circumstances when stating the second hypothetical question, the expert did not consider them in responding to the second hypothetical question.

The plaintiff also argues that the law judge failed to include a limitation for a "marginal ability in Math" (Doc. 24, p. 8). This contention is based on the plaintiff's math score on an achievement test in high school that was comparable to an average student in grade 4.8 (id., p. 7; see Tr. 337). This test was administered by a teacher to describe the plaintiff's school performance (Tr. 337) and, therefore, was not entitled to any special weight. See 20 C.F.R. 416.913(d)(2).

Regardless, the law judge's residual functional capacity essentially conveyed to the expert that the plaintiff had a marginal education (Tr. 42, 43). Thus, a "[m]arginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. 416.964(b)(2) (emphasis added). The law judge told the

expert that the plaintiff is "limited to performing work involving no detailed or complex tasks" (Tr. 42) and emphasized that the work needs to be of an "unskilled nature" (Tr. 43).   Thus, the law judge's limitations adequately account for a marginal education.   See Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180 (11th Cir. 2011)(A hypothetical question adequately accounts for a claimant's limitations "when the question[ ] otherwise implicitly account[s] for the [ ] limitations").   Accordingly, the law judge did not err by not including in the residual functional capacity and hypothetical questions to the expert a "marginal ability in Math."

Moreover, it is noted that any failure to include such a limitation would be harmless error.   Thus, even accepting the plaintiff's contention that her mathematics skills were equivalent to a fourth grader, according to the Dictionary of Occupational Titles (DOT) descriptions she attached to her memorandum she could at least perform the jobs of surveillance systems monitor and ampoule sealer (Doc. 24-1, pp. 5, 9).   Both of those jobs are described in the DOT as requiring only level 1 basic mathematics (id.), which the plaintiff concedes is a "level consistent with a person of the claimant's IQ and intellectual and educational functioning" (Doc. 24, p. 9).

Notably, the law judge pointed out that the plaintiff reported that she was capable of paying bills and handling a savings account (Tr. 19). The law judge also considered that a consultative psychologist found the plaintiff capable of managing her own funds (id.; see also Tr. 18). These circumstances further support the conclusion that the plaintiff had sufficient math ability to perform the jobs of surveillance systems monitor and ampoule sealer.

The plaintiff also argues that the law judge erred by failing to include a limitation for a "very low mental aptitude" (Doc. 24, p. 8). However, such an impairment is unsupported by the record, which reflects that the plaintiff's intellectual capabilities are "borderline" or better (see Tr. 335-36). Furthermore, a "very low mental aptitude" is vague and does not adequately specify the resulting functional limitations. Therefore, the law judge did not err by failing to include a limitation for "very low mental aptitude." In sum, the plaintiff has failed to show that the law judge's residual functional capacity and pertinent hypothetical question to the vocational expert were deficient.

Finally, the plaintiff contends the vocational expert's testimony that she could perform the jobs of ticket checker and surveillance system

monitor is inconsistent with the DOT (see Doc. 24, pp. 8-9). Specifically, the plaintiff contends that the DOT describes these jobs as requiring level 3 math, reasoning or language skills, which are above her educational and intellectual achievements (id.). This contention is also unmeritorious.

As discussed, the pertinent hypothetical question took into account the plaintiff's educational background, work history, and limitations to jobs that are "unskilled" and "involv[e] no detailed or complex tasks" (Tr. 42-43). Furthermore, the law judge told the expert to alert her if his testimony differs from the information in the DOT (Tr. 41). See SSR 00-4p. The expert did not alert the law judge to any distinctions, and there is no other evidence of such inconsistencies in the record.[3]

In all events, the law judge did not err by relying upon the vocational expert's testimony in finding that the plaintiff could perform the jobs of ticket taker and surveillance systems monitor because the expert's testimony prevails over the DOT. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000). Thus, the Eleventh Circuit has held that, where there is a conflict between the expert's testimony

---

[3]The plaintiff asserts that she was unrepresented at the hearing and was not given the opportunity to cross-exam the vocational expert (Doc. 24, p. 9). However, the record indicates that the plaintiff was asked if she wanted to ask the vocational expert any questions, to which she responded, "I don't" (Tr. 45).

and a job description contained in the DOT, "the VE's testimony 'trumps' the DOT." Id. at 1230; Miller v. Commissioner of Social Security, 246 Fed. Appx. 660 (11th Cir. 2007).

As the court of appeals explained, the DOT is not comprehensive and is to be supplemented with local information, which the expert provides. Jones v. Apfel, supra, 190 F.3d at 1230; see also Hurtado v. Commissioner of Social Security, 425 Fed. Appx. 793, 795-96 (11th Cir. 2011)("the VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job"); Jones v. Commissioner of Social Security, 423 Fed. Appx. 936, 939 (11th Cir. 2011)("The DOT provides descriptions of occupations, not of the numerous jobs within those occupations, and the VE may be able to provide more specific information about jobs or occupations than the DOT"). In this case, the law judge reasonably accepted the uncontroverted testimony of the vocational expert (see Tr. 20), who has worked in the field for more than forty years (Tr. 149). Therefore, the law judge "was permitted to base his findings about these ... jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT...." Jones v. Commissioner of Social Security, supra, 423 Fed. Appx. at 939.

Finally, the law judge also found, based on the testimony of the vocational expert, that the plaintiff could perform the job of sealer (Tr. 20). Significantly, the plaintiff concedes that the mental requirements of the ampoule sealer job is "consistent with a person of the claimant's IQ and intellectual and educational functioning" (Doc. 24, p. 9). Although the plaintiff speculates that the DOT's description of the job may be inaccurate because the description has not been updated recently (id.), the plaintiff presents no evidence that the job of ampoule sealer has changed. Furthermore, even if it did, the law judge's conclusion that the plaintiff could perform this job is supported by the testimony of the vocational expert. See Jones v. Apfel, supra, 190 F.3d at 1230.

The plaintiff also questions whether there is a significant number of sealer jobs in the national economy (Doc. 24, p. 9). However, the expert's undisputed evidence in this case is that there are 700 such jobs locally, 1,500 statewide, and 70,000 nationwide (Tr. 44). In the Eleventh Circuit, this is clearly a sufficient amount of jobs. See Brooks v. Barnhart, 133 Fed. Appx. 669, 670 (11th Cir. 2005)(noting that the Eleventh Circuit has held that 174 jobs in the area is a significant amount of jobs). The plaintiff questions the expert's testimony, citing to an expert opinion given during a 2008

administrative hearing in California that there were only 650 sealer jobs in California and 6,500 jobs nationally (Doc. 24, p. 9). However, as the plaintiff concedes, this "is not evidence and is not a basis to find that the ALJ's decision is not supported by ... substantial evidence" (id.). Particularly in light of the plaintiff's appropriate concessions, there is plainly substantial evidence supporting the law judge's conclusion that the plaintiff is not disabled because she can perform the job of ampoule sealer.

In sum, the plaintiff has failed to show that the law judge erred in relying on the vocational expert's testimony in finding that the plaintiff could perform jobs that exist in significant numbers in the national economy and, therefore, was not disabled.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this __1st__ day of February, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE